

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3002 | **DATE** | 12/6/2002 |
| **CASE TITLE** | U S A ex rel. FREDERICK LEFLORE vs. DWAYNE CLARK | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Lefore'S petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | DEC 10 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 25 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | 02 DEC -9 AM 11:16 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ex rel. ) <br> FREDERICK LEFLORE, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> DWAYNE CLARK ) <br> ) <br> Respondent. ) | No. 99 C 3002 <br><br> HONORABLE CHARLES R. NORGLE <br><br> DEC 1 0 2002 |

## OPINION AND ORDER

CHARLES R. NORGLE, Sr., District Judge:

Before the court is Frederick LeFlore's petition for writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the petition is denied.

### I. BACKGROUND

A jury in Cook County, Illinois convicted LeFlore of murder and armed robbery. LeFlore received concurrent sentences of 70 and 30 years for the respective crimes. The court takes the relevant facts from the Illinois Appellate Court's order affirming LeFlore's conviction.[1] On habeas review, the court presumes that the Illinois court's factual findings are correct. 28 U.S.C. § 2254(e)(1).

The events that resulted in LeFlore's conviction occurred on January 17, 1986. On that day, Dennis Whitney ("Whitney"), along with Larry King ("King"), Lavergne Charles ("Charles") and Arthur Alexander ("Alexander") were selling narcotics from an apartment on West Flournoy Street

---

[1] In a bound volume, Respondent provided copies of the state court proceedings, including the state court opinions. The court refers to these documents by the record citation and exhibit designation. The Illinois Appellate Court's order on direct appeal is (R. 12, Ex. A.)

25

in Chicago. Alexander and King had previously devised a plan to rob Whitney. At approximately 7:25 p.m., Alexander entered the apartment with three armed men, one of whom was LeFlore. The armed men ordered Alexander, Charles, King, and Whitney to lie face-down on the floor. Alexander and Whitney were then tied up and the armed men searched the apartment. The armed men took narcotics, jewelry, and cash from the apartment and the persons of King and Charles. The men then shot Whitney and fled the apartment.

LeFlore was taken into custody on January 20, 1986 after another suspect implicated him in the crime. A lineup was conducted, but Charles, who was the victim's girlfriend, did not identify LeFlore as one of the perpetrators. LeFlore was released from custody after the lineup.

Several weeks later, on February 13, 1986, Charles, King, and LeFlore were all subpoenaed to testify before the Cook County Grand Jury concerning the events of January 17, 1986. Before Charles' scheduled testimony, she recognized LeFlore as he stepped off an elevator. Charles told Detective Blomstrand that LeFlore was wearing the same glasses and coat he had worn on the night of the murder and robbery. Charles also stated that she had recognized LeFlore at the lineup on January 20th, but did not identify him because he had worn different glasses and she had been scared. Detective Blomstrand arrested LeFlore and transported him to a local station house.

At the station house, LeFlore confessed that he was one of the armed robbers that had killed Whitney. LeFlore said that he and three other men, two of whom were Sammie Dave Walker ("Walker") and Lord Bow ("Bow"), went to Whitney's apartment. Once at the apartment, Bow waited in the car while LeFlore, Walker, and the other man were let inside by Alexander. LeFlore admitted that he and the other robbers ordered Alexander, Charles, King, and Whitney to lie face-down on the floor. LeFlore said that he and the other robbers then searched the apartment and took

narcotics and money. Further, LeFlore admitted that he was carrying two shotguns during the robbery. At one point, the shotgun in LeFlore's right hand lowered and discharged, hitting Whitney in the head. Walker then twice shot Whitney with his pistol. Immediately after this, the men fled the apartment.

Prior to trial, LeFlore moved to quash his arrest and suppress evidence. The state trial court held a hearing on the issue, and heard the testimony of LeFlore and an investigating detective. The court denied the motion, and the case proceeded to trial.

LeFlore testified in his own defense and attempted to assert an alibi defense. LeFlore testified that on January 17, 1986, he was at an apartment belonging to Ola Mae Davidson. LeFlore testified that he did not know Charles or Whitney, that he had never been to Whitney's apartment, and that he did not shoot Whitney. LeFlore admitted that he made a statement to police, but claimed that he did so under duress. Ola Mae Davidson and Angela McAlpine also testified in LeFlore's defense. Both women testified that LeFlore was with them on the night of January 17th.

The jury did not accept LeFlore's version, and convicted him of murder and armed robbery. LeFlore filed a direct appeal arguing: (1) the trial court erred by denying his motion to quash the arrest and suppress identification testimony; (2) denial of a fair trial due to the admission and publication of gruesome photographs; (3) denial of a fair trial because of judicial bias arising out of the court's response to a jury note; and (4) improper sentencing. In an order dated August 6, 1991 the Illinois Appellate Court affirmed LeFlore's conviction and sentence. (R. 12, Ex. A.) LeFlore unsuccessfully sought leave to appeal the same four issues to the Illinois Supreme Court.

LeFlore continued to attack his conviction with a post-conviction petition to the original trial court. LeFlore raised nine issues: (1) failure to obtain the common law record; (2) a suggestive

identification procedure; (3) abuse of subpoena power; (4) prejudicial admission of evidence concerning a co-accused; (5) denial of the right to face his accuser; (6) denial of the right to obtain favorable testimony; (7) not proven guilty beyond a reasonable doubt; (8) ineffective assistance of trial counsel; (9) ineffective assistance of appellate counsel. On March 29, 1995 the trial court dismissed the petition.

LeFlore appealed the denial of his post-conviction petition with the assistance of appointed counsel. Subsequently, LeFlore's appointed attorney filed a motion to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987). The Illinois Appellate Court granted counsel's motion to withdraw, writing that it had reviewed the record and found no issues of arguable merit. LeFlore filed a petition for leave to appeal to the Illinois Supreme Court, which was denied.

LeFlore now seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. LeFlore re-asserts the nine claims he raised in his post-conviction petition, and adds five more claims: (1) a challenge to the presumption of correctness of the record; (2) the trial court improperly denied his motion to quash arrest and suppress evidence; (3) he was denied a fair trial by the admission and publication of gruesome photographs: (4) the trial court committed error in addressing a jury question; and (5) the sentence is excessive. LeFlore's petition is fully briefed and ripe for ruling.

## II. DISCUSSION

### A. Standard of review:

LeFlore's case is governed by 28 U.S.C. § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act ("ADEPA"). Section 2254 sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" clause encompass two types of error that will cause a writ to issue. See Williams v. Taylor, 529 U.S. 362, 377, 398-411 (2000) (opinion of O'Connor, J.). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from . . . relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. See id. at 404 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed"); see also Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (discussing Williams).

The "unreasonable application" clause of § 2254(d)(1) refers to cases where the state court unreasonably applies Supreme Court precedent to the facts of a particular case. See Williams 529 U.S. at 405-06 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that

5

the state-court decision falls within that provision's 'unreasonable application' clause."); see also Boss 263 F.3d at 739. While federal courts have an independent duty to say what the law is, Williams, 529 U.S. at 407-09, an erroneous application of the law by a state court will not be grounds for relief unless the application was also unreasonable. See id.; Boss 263 F.3d at 739. Whether the state court's decision was reasonable is an objective question. that does not necessarily turn on the correctness of the state court's decision. See Williams, 529 U.S. at 407-09 (holding that a federal habeas court should not issue a writ simply because it concludes that the state court erroneously applied federal law, rather, the application must also be unreasonable); cf. Schaff v. Snyder, 190 F.3d 513, 523 (7th Cir. 1999) (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case). It is only when the application is unreasonably erroneous that habeas relief may be granted. See Williams, 529 U.S. at 407-09.

Section 2254(d)(2) involves the state court's determination of the facts, which are presumed correct. See 28 U.S.C. 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir. 1995). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Procedural default:**

Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-43 (1999); see also Spreitzer v. Schomig, 219 F.3d 639, 644-45 (7th Cir. 2000) (discussing exhaustion of habeas claims). The exhaustion requirement extends to all levels of relief that is available under state law. See O'Sullivan, 526 U.S. at 846-48. Thus, to preserve claims for

federal habeas review, a petitioner is required on direct appeal to seek all appeals of right and all discretionary review available under state law. See id. This same rule applies to state post-conviction proceedings, so that a failure to pursue all issues and remedies during state sanctioned collateral proceedings will bar federal relief. See Picard v. Connor, 404 U.S. 270, 275-76 (1971) (discussing the need for federal-state comity that underlies the exhaustion requirement); Wilkinson v. Cowan, 231 F.3d 347, 350 (7th Cir. 2000) (collecting authority noting that failure to appeal from denial of a post-conviction petition normally bars federal review); Spreitzer, 219 F.3d at 644-45 (analyzing exhaustion of claims); Momient-El v. DeTella, 118 F.3d 535, 540-41 (7th Cir. 1997) (noting that failure to appeal the denial of post-conviction claims results in procedural default).

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Recently, the Seventh Circuit addressed the effect on federal habeas review of a state court granting a Finley motion. See Wilkinson, 231 F.3d at 350-51. Pennsylvania v. Finley allows appointed counsel to withdraw from an appeal of state post-conviction proceedings when counsel has reviewed the record and found no issues of merit. See e.g. Wilkinson, 231 F.3d at 350-51. It

7

is not unusual for an Illinois Appellate Court to grant a Finley motion, and in so doing, write that it has carefully reviewed the record and has found no arguable issue of merit. Wilkinson holds that such a disposition is a decision on the merits, rather than a decision based on a procedural default. See Wilkinson, 231 F.3d at 350-52. Thus, a petitioner in that situation has preserved for federal habeas review the merits of all claims presented in the post-conviction petition. See id.; Braun, 227 F.3d at 912.

Federal courts may review defaulted claims only if: (1) the petitioner shows cause for failure to raise the claim and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. See Edwards v. Carpenter, 529 U.S. 446, 450-52 (2000); Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917. With these principles in mind, the court addresses LeFlore's petition.

## C. LeFlore's petition:

### 1. Waived and defaulted issues:

LeFlore's habeas petition raises five issues that he did not include in his post-conviction petition.[2] The court will address these claims only to the extent that they overlap with arguments properly developed in the state court. The court will not consider arguments raised for the first time, because LeFlore has procedurally defaulted them. Nor will the court consider arguments that LeFlore raised on direct appeal but did not pursue during post-conviction proceedings, because

---

[2]Those claims are: (1) a challenge to the correctness of the record; (2) erroneous denial of his motion to quash arrest and suppress evidence; (3) an evidentiary issue concerning the admission and publication of photographs; (4) the trial court's handling of a jury question; and (5) a sentencing issue. (See *supra* pp. 3-4.)

8

LeFlore has waived those arguments. As discussed above, LeFlore is required to fairly present constitutional issues to the state court prior to seeking federal habeas review. See O'Sullivan, 526 U.S. at 848; Rodriguez, 193 F.3d at 916. The court can consider procedurally defaulted arguments only to the extent that LeFlore demonstrates cause and prejudice or a fundamental miscarriage of justice. See Edwards, 529 U.S. at 450-52; Spreitzer, 219 F.3d at 647-48. LeFlore demonstrates neither, so the court does not address any waived or defaulted issues.

### 2. Denial of the common law record:

LeFlore asserts that he was denied access to the common law record, which impeded his ability to file a complete post-conviction petition. This claim is not cognizable for habeas relief. Relief under § 2254 is only available for violations of federal law that occur during a criminal conviction in state court. See 28 U.S.C. § 2254(a). State sanctioned post-conviction collateral proceedings are civil in nature, rather than criminal. Therefore, § 2254 does not afford relief for any errors that occur during a state post-conviction proceeding. See Finley, 481 U.S. at 556-57; see also Liegakos v. Cooke, 106 F.3d 1381, 1384-85 (7th Cir. 1997) (noting that states are free to modify or even abolish collateral review of convictions); Zamora v. Pierson, 158 F. Supp. 2d 830, 835 (N.D. Ill. 2001) (collecting authority). This claim is denied on its merits because it does not allege a violation of federal rights.

### 3. Suggestive identification procedure:

LeFlore argues that his due process rights were violated by improperly suggestive identifications. Recall that shortly after the crime, LeFlore was in a lineup shown to Charles, and that Charles did not identify LeFlore to police officers. LeFlore complains that he was later subpoenaed to appear before the grand jury at the same time as Charles, at which time Charles

identified LeFlore. LeFlore points out that on the day of the subpoena, Charles was accompanied by a person, King, who had already implicated LeFlore in the crime. And, LeFlore asserts that Alexander identified LeFlore as a perpetrator during a pre-trial motion hearing after having difficulty identifying the perpetrators during earlier police questioning.

On direct appeal, the Illinois Appellate Court rejected the argument that LeFlore was subject to an impermissibly suggestive pre-trial identification procedure. The court ruled that the pre-trial identification was not improperly suggestive, and even if it were, the later in-court identifications were reliable and admissible. (See R. 12, Ex. A, pp. 5-7.) The approach taken by the Illinois Appellate Court was consistent with federal Supreme Court precedent. A criminal defendant has a due process right to be free from a pre-trial identification procedure that is "'unnecessarily suggestive and conducive to irreparable mistaken identification.'" Cossel v. Miller, 229 F.3d 649, 655 (7 Cir. 2000) (quoting Stovall v. Denro, 388 U.S. 293, 301-02 (1967)); see also Neil v. Biggers, 409 U.S. 188, 199-200 (1972) (reiterating that misidentification is the due process violation, and discussing factors to consider whether a pre-trial lineup was unnecessarily suggestive). A due process violation occurs if both a pre-trial identification procedure was unnecessarily suggestive and a later in-court identification was unreliable. See Biggers, 409 U.S. at 199-200; Rodriquez, 63 F.3d at 555-56; United States v. Rutledge, 40 F.3d 879, 889 (7th Cir. 1994) (identification analysis on direct appeal), rev'd on other grounds, 511 U.S. 292 (1996).

And, the Illinois Appellate Court's analysis was not an unreasonable application of federal law. The Illinois Court noted that Charles' identification of LeFlore appeared to be unprompted and not impermissibly suggestive. (See R. 12, Ex. A, pg. 6.) The Court found that the purpose for subpoenaing LeFlore, Charles, and King before the grand jury was to seek an indictment against

10

Arthur Alexander, not to conduct an improper show-up on LeFlore. (See id. at 6-7.) There is nothing in the record to demonstrate that this conclusion was unreasonable.

Moreover, the Illinois Appellate Court found that Charles' in-court identification of LeFlore was reliable because she testified that she was in the apartment during the crime, and identified LeFlore as one of the armed men that committed the murder and robbery. (See id.); see also Biggers, 409 U.S. at 199-200 (noting that the reliability of an identification may be determined by examining "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."). Charles also testified that she recognized LeFlore during the initial lineup, but did not identify him to police officers because she was scared. (See R. 12, Ex. A, pp. 6-7.) Finally, Charles testified that after the initial lineup, she did not see any photographic arrays containing LeFlore's photo, nor did she view any additional lineups. (See id.) On these facts, the Illinois Appellate Court held that Charles' in-court identification was reliable.

LeFlore argues that Charles' testimony was not credible, but that was an issue that the jury resolved against LeFlore. The record shows that the Illinois courts addressed the identification issue several times. The trial court considered motions to quash LeFlore's arrest and suppress the identification testimony, which included live testimony. The Appellate Court revisited the issue and ruled that Charles' pre-trial identification was proper and her in-court identification was reliable. The courts made these findings on full records and after hearing the arguments of counsel. LeFlore is unhappy with the State court rulings, but fails to demonstrate that they were the result of unreasonable applications of federal law.

11

### 4. Abuse of subpoena power:

LeFlore claims that the State misused its subpoena power when it ordered him, Lavergne Charles and Larry King to appear before the grand jury on February 13, 1986. In a cryptic argument, LeFlore claims that the subpoena was a "subterfuge," but does not elaborate about the purpose of the alleged subterfuge or how the subpoena or subterfuge implicated his constitutional rights. In any event, relief under § 2254 is limited to violations of federal law that occur during a criminal prosecution in state court. See 28 U.S.C. § 2254(a). At no point in this argument does LeFlore make any colorable claim that the subpoena ordering him to appear to testify before the grand jury violated any of his trial rights. See id.; see also Stone v. Powell, 428 U.S. 465 (1976); Hampton v. Wyant, 296 F.3d 560, 562-65 (7th Cir. 2002). This claim is denied on its merits.

### 5. Admission of evidence concerning another perpetrator:

There was evidence that another man, Sidney Earl Hines, was one of the armed men that committed the armed robbery and murder. Several months prior to LeFlore's trial, Hines was tried on similar charges and acquitted. During LeFlore's trial, the State made several references to Hines, Hines' fingerprints being found on a knife found at the murder scene, and LeFlore's post-arrest statement implicating Hines in the crime.

LeFlore claims that his constitutional rights were somehow violated when the state presented evidence that Hines was another perpetrator. Evidentiary rulings of state trial courts are normally not subject to habeas review. Dressler v. McCaughtry, 238 F.3d 908, 918 (7th Cir. 2001) (citing United States ex rel. Bibbs v. Twomey, 506 F.3d 1220, 1223 (7th Cir. 1974)). An exception to this rule is if a habeas petitioner demonstrates that an evidentiary ruling was incorrect and so prejudicial that it violated his due process right to a fundamentally fair trail, creating the likelihood that an

12

innocent person was convicted. See Dressler, 238 F.3d at 914 (citing Thompkins v. Cohen, 965 F.3d 330, 333 (7th Cir. 1992)); see also Idaho v. Wright, 497 U.S. 805, 110 S. Ct. 3139, 3145-48 (1990). Federal courts must proceed with caution in this area. Bibbs, 506 F.2d at 1223 (citing Spencer v. Texas, 385 U.S. 554 (1967)). To proceed otherwise would put the federal courts in the role of reviewing state court evidentiary decisions when no constitutional errors have been made. Bibbs, 506 F.2d at 1223 (citing Harris v. State of Illinois, 457 F.2d 191, 198 (7th Cir. 1972)).

Here, LeFlore simply complains about the State's references to Hines. LeFlore does not articulate whether he objected to the Hines evidence at trial, and the record that LeFlore includes with his petition indicates that he did not. Moreover, LeFlore fails to demonstrate that the admission of the evidence was erroneous, much less erroneous to the point of offending the constitution. This claim is denied on its merits.

### 6. Denial of the right of confrontation:

During the State's investigation of the crime, prosecutors and police interviewed Larry King, who was present at the crime scene. King also orchestrated the crime by plotting the robbery with Arthur Alexander. The State did not call King as a witness at LeFlore's trial, which LeFlore claims is a violation of his sixth amendment right to confront the witnesses against him.

The sixth amendment's confrontation clause encompasses a defendant's right to see the witnesses against him in open court, hear what the witness has to say, and to cross-examine the witness. See e.g. Denny v. Gudmanson, 252 F.3d 896, 900-01 (7th Cir. 2001) (citing Pointer v. Texas, 380 U.S. 400, 404 (1965)). The confrontation clause does not require the State to produce at trial all persons that have information about a crime. The clause simply requires that any witnesses that are called are to be called in open court and be subject to questioning by the defendant.

13

In this case, the State did not call King as a witness. Moreover, there is no indication that the State presented any out of court statement made by King. This claim is devoid of merit.

### 7. Denial of the right to obtain favorable testimony:

After the State rested its case, LeFlore attempted to amend his witness list to add Sidney Hines. As discussed above, several months prior to LeFlore's trial, Hines was tried and acquitted on similar charges. LeFlore's counsel asserted that he had just located Hines and arranged for Hines to come in and testify the following day. Counsel proffered that Hines' testimony would be to the effect that he (Hines) was not present during the robbery. The prosecution objected, and the court denied LeFlore's motion to amend the witness list to include Hines.

The sixth amendment affords criminal defendants compulsory process to obtain witnesses to testify in their favor. See United States v. Harvey, 117 F.3d 1044, 1047 (7th Cir. 1997). The Supreme Court has stated that "'few rights are more fundamental than that of an accused to present witnesses in his own defense.'" Id. (citing Taylor v. Illinois, 484 U.S. 400, 408 (1988)); see also Tyson v. Trigg, 50 F.3d 436, 444 (7th Cir. 1995) (citing Chambers v. Mississippi, 410 U.S. 284, 302 (1973) and Washington v. Texas, 388 U.S. 14 (1967)). Fundamental as this right is, however, it is not one of the so-called structural errors that require automatic reversal or the grant of habeas corpus. See e.g. Neder v. United States, 527 U.S. 1, 119 S. Ct. 1827, 1833-34 (1999) (discussing *inter alia* Arizona v. Fulminante, 499 U.S. 279, 306 (1991)); United States v. Harbin, 250 F.3d 532, 543 (7th Cir. 2001) (discussing structural error on direct appeal under Federal Rule of Criminal Procedure

52(a)); Caralino v. Washington, 122 F.3d 8, 9-10 (7th Cir. 1997). The class of structural errors is small, and does not include an erroneous exclusion of a defendant's witness.[3]

The Supreme Court has upheld the exclusion of defense witnesses as a sanction for discovery violations, see Harvey, 117 F.3d at 1047 (citing Taylor, 484 U.S. at 414), and the Seventh Circuit has declined to interpret Taylor as requiring a bright line rule for cases where a state trial court has excluded a defense witness. See Tyson, 50 F.3d at 444-45 (noting that a court does not violate the sixth amendment by sustaining a prosecutor's objection to defense witness testimony or excluding a witness as a discovery sanction). At the same time, however, the State cannot arbitrarily stifle by way of discovery sanctions a defendant's efforts to mount a defense. Tyson, 50 F.3d at 444.

In this case, after the state rested, LeFlore attempted to amend his witness list to add Hines as a testifying witness. LeFlore's reason for failing to disclose Hines as a witness did not satisfy the trial judge. The judge noted that Hines had been acquitted several months earlier, and that the State was entitled to some notice that LeFlore was going to call Hines. The judge also heard LeFlore's proffer that Hines would testify to the effect that he, Hines, did not participate in the crime.

On the above facts, the court cannot say that the state court's decision was contrary to or an unreasonable application of federal Supreme Court precedent. Indeed, the Supreme Court has held that preclusion of a defense witness is not *per se* unconstitutional. See Taylor, 108 S. Ct. at 653-56; Tyson, 50 F.3d at 445. Courts are to reasonably evaluate the circumstances at hand to determine if

---

[3]In Johnson v. United States, 520 U.S. 461, 468-69 (1997), the Supreme Court delineated the class of structural errors as: Gideon v. Wainwright, 372 U.S. 335 (1963) (complete denial of right to counsel); Tumey v. Ohio, 273 U.S. 510 (1927) (biased trial judge); Vasquez v. Hillery, 474 U.S. 254 (1986) (racial discrimination in grand jury selection); McKaskle v. Wiggins, 465 U.S. 168 (1984) (denial of the right to self-representation at trial); Waller v. Georgia, 467 U.S. 39 (1984) (denial of a public trial); Sullivan v. Louisiana, 508 U.S. 275 (1993) (erroneous reasonable-doubt instruction).

preclusion is appropriate. See Taylor, 108 S. Ct. at 656; Tyson, 50 F.3d at 445. Consistent with Taylor, the trial judge noted the untimeliness of LeFlore's request, questioned why LeFlore was making the late disclosure, and heard a proffer of Hines' testimony. After considering these factors, the judge denied LeFlore's motion to amend the witness list to include Hines. Notwithstanding that this exchange was brief, the trial judge did not arbitrarily exclude Hines' testimony.

And, if the court were to reach the question of harmless error, the state court's decision would stand, whether analyzed under the AEDPA or Brecht v. Abrahamson, 507 U.S. 619 (1993). LeFlore makes no argument as to how Hines' proffered testimony that he, Hines, was not present during the robbery and murder would have any effect on LeFlore's case. In short, LeFlore fails to demonstrate that he suffered any prejudice as a result of Hines' preclusion. Absent such a showing, or a demonstration that the state court's decision was an unreasonable application of federal law, habeas relief must be denied.

### 8. Not proven guilty beyond a reasonable doubt:

A habeas petition is not a re-trial on the merits, nor is it a substitute for a direct appeal. Tyson, 50 F.3d at 438. A federal habeas court does not re-evaluate evidence, nor does it substitute its view of the evidence from the record for that of the jury's, which saw and heard the evidence in open court. On habeas review, the jury's decision will stand unless the state court unreasonably found, after viewing the evidence in the light most favorable to the prosecution, that no rational jury could have found the essential elements of the crime beyond a reasonable doubt. See Wright v. West, 112 S. Ct. 2482 (1992); Jackson v. Virginia, 443 U.S. 307 (1979).

Here, LeFlore fails to demonstrate that habeas relief is appropriate. LeFlore uses several pages of his brief to recite many bits of evidence, but none of that evidence exculpates him. The

Illinois Appellate Court discussed the evidence against LeFlore, which included eyewitness and victim testimony implicating LeFlore, as well as LeFlore's confession. LeFlore's defense to the case was an alibi, which the jury was free to accept or reject. As things turned out, the jury accepted the State's version of events and rejected LeFlore's. On this record, the court cannot find that no rational jury could have convicted LeFlore. This claim is denied on its merits.

### 9. Ineffective assistance of counsel:

LeFlore's final claims are that he was denied effective assistance of trial and appellate counsel. Ineffective assistance of counsel claims are governed by the familiar standards of Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). LeFlore must first demonstrate that counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation. See id. at 687-88. The court reviews counsel's performance deferentially, particularly counsel's choice of strategies. See Drake v. Clark, 14 F.3d 351, 355-57 (7th Cir. 1994). A habeas petitioner bears a heavy burden in demonstrating that counsel's performance was deficient to the point of offending the constitution. See id. LeFlore must also show that the deficient performance prejudiced his trial and/or appeal, meaning that but for the deficient representation, there is a reasonable probability that the result of the proceedings would have been different. See Strickland, 466 U.S. at 694. A reasonable probability of a different result will be found if the court's confidence in the outcome is undermined by evidence of deficient attorney performance. See Morris v. United States, 264 F.3d 726, 727 (7th Cir. 2001).

As for trial counsel's performance, LeFlore complains that counsel filed ineffective pre-trial motions to quash arrest and suppress evidence, and that counsel failed to properly list all material witnesses for LeFlore's alibi defense. Neither of these grounds has merit. The record clearly

establishes that counsel filed motions to quash LeFlore's arrest and suppress his statements, which precipitated a hearing and a ruling unfavorable to LeFlore. That the motions were unsuccessful does not mean that counsel's performance was ineffective. There is nothing in the record to demonstrate that LeFlore's trial counsel was deficient in advocating pre-trial motions.

Concerning the witness disclosure issue, the court will assume for the sake of argument that the late disclosure could be attributed to counsel and would constitute defective performance. With that assumption, LeFlore fails to show that the testimony would have had any effect on the outcome, or even make a proffer as to what the testimony would be. LeFlore argues that the testimony would have supported his alibi defense, but he and at least two other witnesses testified about LeFlore's whereabouts during the crime, and the jury rejected that evidence. LeFlore's submissions do not undermine the court's confidence in his conviction.

Turning to appellate counsel, LeFlore simply re-asserts of all of his habeas claims. The court construes this as an argument that appellate counsel should have pursued all of these claims on direct appeal. As discussed above, none of the issues has any demonstrated merit, so appellate counsel was not ineffective in not raising the issue, and there was no prejudice to LeFlore as a result.

### III. CONCLUSION

For the foregoing reasons, LeFlore's petition for writ of habeas corpus is denied.

IT IS SO ORDERED.

ENTER: _____
CHARLES RONALD NORGLE, SR.,
Judge, United States District Court

DATE: 12/6/02